I did, I'm sorry. I probably mumbled it. That's what's up next. Is everybody ready? Please proceed. Thank you. Good morning. I'm Florence Brummer. I represent Armando Castile. I'm from Phoenix, Arizona. The first question that I want to discuss this morning is regarding the appropriate standard of review in this case. And this was actually based on the panel's request that we look into this a little further and gave us some case sites to look at. The question is, what is the review of in a habeas corpus case where the state court does not address plaintiff's argument under the U.S. Constitution? And usually when the case is adequately addressed, it's a de novo review. Except in this case, when the state court does not adequately analyze it, an independent review is required. And that's an analyzation of the entire record to determine whether the ultimate disposition of the state appeals consistent with the law in the unaddressed federal claim. May I ask you a clarifying question? Are you, in giving the answer that you're giving, are you assuming that the issue was properly raised in state court? Yes. All right. So when you give the answer you give, you are assuming exhaustion. Right. And we cover that in our reply brief. I understand you cover it, but I'm a little hard-pressed to understand how a one-line reference in a conclusion gives the state court a fair opportunity to consider a due process challenge to an evidentiary problem. Thank you. In the appellate briefs and in the petition for review to the Arizona Supreme Court, the Supreme Court case precedent was cited. Oh, sure it was. But it was Supreme Court precedent that wasn't on the point that is now being urged, was it? Or do you think that Hale and Shepard control the disposition of this case? Sure. Okay. And the state court basically took the issue and said it was properly admitted and there was no objection and there was overwhelming evidence and here's our result. Going with the, even with independent review, you go through a reasonableness test, whether the state review was reasonable. In this case, it was not. In the state review, which the district court parrots, so even if you had a de novo review and did a de novo review of the district court, I think you would still end up with the same result. You have the state court misstating things that everybody agrees on and aren't issues. The state court says, well, the videotape's not a big deal because the petitioner is the absolutely only one who could have done this. This was demonstrated. Except it wasn't demonstrated. It was a close call between whether the child was hurt during the time that Mr. Castile was babysitting. The medical examiner testified the child was hurt between 3 and 4. The child's mother comes home at 4 o'clock, testifies. She picks up the baby, sees vomit and mucus in his mouth and sees that he's limp. And this is after days of him being very ill with fever, coughing, mucus, and she testifies what she does. She picks up the baby. She sees him. She panics. She freaks out. These are her own words. I shook him. I took him. I ran. And what happened to this baby is that he had shaken baby syndrome. That was one material misstatement in the state court of appeals decision. The other material misstatement was counsel didn't object. And what happens is we have a voluntariness hearing a few days before regarding Mr. Castile's statement. Remember, there's never a confession in this case. And at the hearing, the state court or the prosecutor cites the Miller case and says, well, we're just putting it in to demonstrate the technique of interrogation. And counsel objects. And the judge says, well, I should probably look at the tape. I'm going to let it in for now. Nobody mentioned the tape in the meantime. And then defense counsel says, well, in that event, since it's coming in, I want any drug references redacted. So we have that. And then we get to the point where the prosecutor is going to show the tape. And defense counsel stands up and says, wait a minute, this isn't relevant. We still have all these problems with the misstatements of the police officer. And the court says, well, let it in. They watch the tape. And the judge's reaction is very striking. The judge says, never in a million years would I have let this tape in if I knew what was in it. This is after the judge said that he wanted to spend some more time looking at it, which obviously he never did. And then he says, very surprisingly, I thought you were objecting, but you didn't really mean it. And that's an objection is an objection. And the judge should take it at that and not think there's some underlying meaning that a party isn't really going to mean it. Can you tell me, even with a straight-up review of the issue, Dubria obviously is the controlling authority in this circuit. It is very close. There are some differences. I assume you believe it doesn't absolutely control. And if you do, why do you think it doesn't? I'm not recalling the facts of that case. Well, you might want to take a look at it when you sit down, because it is practically right on point. Not entirely. Okay. I will look at it. Very close. I'm going to reserve two minutes for rebuttal, but just basically to say the other very striking thing that the state court says in its opinion is that there's all this evidence of former abuse of the child, including bruises. And this does not come up in the state court trial. There's bruises. The medical examiner says they're five to eight days old. The child visits his biological father during that time and comes home with bruises. The mother said the child came home with the bruises. And the state court says, well, there was these bruises and Mr. Castillo must have done them, and that's why there was no error in this case. If there's no further questions, I'd like to reserve the rest of my time. Thank you. May it please the Court. John Saccomand, Assistant Attorney General for the State of Arizona, on behalf of Respondents. I'd like to start simply by addressing the standard of review. We take a very different position on what the standard of review is. The AEDPA clearly states the standard of review as deferential. This Court defers to the state court decision unless the state court decision was contrary to or involved an objectively unreasonable application of U.S. Supreme Court authority, or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Let me ask a question that sort of follows on that, if I might. Both the Arizona appellate courts and the magistrate findings as adopted by the district refer to either substantial evidence or overwhelming evidence of guilt on the part of Mr. Castillo. Is that correct? That's correct. Actually, I want to backtrack a little from that. The Arizona Court of Appeals doesn't actually summarize the weight of the evidence. It just says this is what the evidence shows. You've actually anticipated my question. Is there anywhere in any written opinion, whether in the Arizona state system or in the magistrate's detailed report, any analysis of what that overwhelming evidence consists of? In the Arizona Court of Appeals, yes. And what do they say that consists of? Or just point me to the ---- Okay. Basically, they ---- the Arizona Court of Appeals goes in depth for two pages, talks about that very issue, but the clincher is at the bottom where the Court says, Dr. Johnson, one of the doctors, was quite convinced that Stephen had suffered an injury of a violent nature. Dr. Johnson testified that Stephen's head injury occurred on the afternoon of his admission to the hospital. After suffering the head injury, Stephen would have been unable to talk, walk, or eat. Stephen's injuries were consistent with a child who had a severe blow to the head. That's the clincher because that's the fatal injury. It's the head injury that's fatal. There's lots of other injuries. Didn't one of the physicians called by the State concede on cross-examination  Your Honor, I'm not exactly sure of the answer to that question. I have a feeling that's probably true. And didn't the doctor who was called to attempt to establish the time of death concede that it could have occurred either when the defendant had custody of the child or when the mother did? Your Honor, if it was between 3 and 4 and the mother came home at 4, that would be consistent. We've read the record. I've read the record. In the cross-examination of the doctor, it was a she, she conceded that Clara was alone with the child during a period of time when the injury could have occurred and for a sufficient length of time to have been put to these injuries. Is that correct? I think that's probably correct, Your Honor. So would it be fair to say that going into this trial you have the prosecution theory of the case, which was that the injuries had to have occurred when Mr. Castillo had custody of the child and not when Clara was there. Is that right? Now, I'm not sure I understand that question, Your Honor. The prosecution theory that the injuries to Stephen, the child, could have only occurred during the period of time when Mr. Castillo was alone with the child. I believe that was the prosecution theory. Wasn't the defense theory that Clara had done it, that the mother, when she came home and found the child asleep, shook the baby in a way that caused the head injury, and that was the cause of death? That was the defense theory. Can you point to any medical evidence which is necessarily inconsistent with the defense theory? That Clara did it. No. I cannot. So the medical evidence, in fact, could have supported the theory that Clara did it or could have supported the theory that Castillo did it. Perhaps, yes. You've looked at the videotape? I have. And watched it? Yes, I have. Did the detective say things during that interrogation on tape that were not correct? Your Honor, I think hyperbole might be an answer to that question. I think every interview of a ---- Didn't, in fact, he tell Castillo on tape, which is a jury error, that the medical experts said that the injuries to Stephen could have only occurred when Castillo had custody of the child? Yes, that's exactly right. And that was not true. Well, according to our discussion, no. There's a theoretical possibility that somebody else could have died. And didn't the detective tell Mr. Castillo on tape that they had narrowed the time of death down to a precise point in time, again, only when he had custody of the child? Yes. And that was not true, was it? I don't believe that the expert testimony ---- I think that would have been an interpretation the jurors could have made about the testimony. But they didn't have to make that determination. Didn't one of the doctors that the State called say that no physician could determine an exact time of death? Well, one of the doctors may have said that, but ---- The only thing that could be said was that the death occurred after 3 p.m.? Your Honor, one of the doctors might have said that. But that doesn't mean that the other doctors didn't say, well, yes, this is a time when we could have ---- when it could have happened. Did any doctor called by the State testify to an exact time of death? No. Even down to an hour? I don't believe so. They focused on a window of time? Yes, they did. And again, that was a window of time when both Castillo and the mother had sole access to the child? Yes. Individual, unsupervised access? Yes. Okay.  And I assume that we've moved to that factual issue. But the second prong of the AEDPA test, which says this Court ---- But the point that Judge Hawkins' line of questions is making is that it would be an overwhelming evidence of guilt, and there wasn't. Your Honor, if the Court had made that determination, which it didn't, it didn't say I'm basing the decision on overwhelming evidence of guilt. I'm basing it on the circumstances of this case. And because the standard of review is two or three pronged, I'd like to kind of go back to that just to say that I think we've reached an unreasonable determination of the facts. I think that's where all of that previous discussion with Judge Hawkins was going. And the standard of review there is that the determination by the state court, if it is a determination of fact, is reviewed under a presumption of correctness, has to be rebutted by clear and convincing evidence. I don't believe that the record support the record that there is clear and convincing evidence in the record to support that. Basically, all of the questions about evidence were before the jurors. The jurors could look at this evidence, and they could make that conclusion. Mr. Chairman, what is the purpose for why was this tape introduced? The tape is very inflammatory. You've got the policeman advising him of his rights, telling him he's under arrest. You have evidence of him requesting an attorney. The officer repeatedly tells him, you're lying, you're lying, you're lying. I don't have to listen to this anymore because I don't believe a word you're saying. What possible evidentiary use was that tape? Well, the state presented it basically so that the ‑‑ to show that the defendant admitted that he was taking care of the child for the entire day until the mother came home at 4 o'clock. Was that disputed otherwise? Well, Your Honor, the state is required to prove its entire case. Now, the defendant might have ‑‑ the defendant can actually get on the stand and say the same thing, but the state has to present its case first. Right. But, I mean, you couldn't have shown that by other means. I mean, there was no other way other than showing an inflammatory tape. Well, Your Honor ‑‑ We couldn't have redacted it for ‑‑ And because I've seen the tape and because I think that the judge in his initial reaction to the tape was because he hadn't seen it. The tape was played to the jurors. He was reading the transcript, as you have done. He was hearing the tape. I've seen the tape as well. You've seen the tape. He was hearing the tape, and then later on, afterwards, after he'd calmed down a little bit, he was angry at the attorneys for not having caught two little pieces of the tape, which lasted for all of 30 seconds at the end. He was upset at himself for introducing the tape. This is one of the, at least in my judgment, one of the better trial judges in Phoenix, Arizona, very talented trial judge. And he says, In my 19 years on the bench, I have never admitted a tape like that in evidence. I'm really concerned about it. Later on, he says, I was shocked when I started to hear the tape and read some of the things on this, the transcripts. I've never admitted a tape like this before. Never, never. Then he says, I can't get over it. This will not ‑‑ this will never. He actually says, This will never hold up if there is any appeal, never in a million years. It's pretty strong language. Well, it is, Your Honor. And I think, though, that later on, after he had calmed down a little bit and after he actually viewed the tape, then he comes to a different conclusion. He comes to a different conclusion after, in his order for the motion for new trial, he comes to the conclusion that, and this is what he says, Under all the circumstances of this case, he doesn't say based on overwhelming evidence. He says, Under all the circumstances of this case, that the error constitutes harmless error. And whether the testimony would have come in or not, or whether the tape had come in or not, there was enough other evidence. This was a week‑long trial. This was a dozen witnesses. And the tape was a very small part of that entire issue. Based on that, the jurors would have found him guilty anyway, which gets us back to the standard of review. And the standard of review is, if we backtrack away from the factual issue and talk about unreasonable application of the United States Supreme Court precedent, the precedent is Brecht. The trial court and the state trial court applied essentially that standard by saying just what I said. The jurors would have found him guilty anyway, even if this tape hadn't come in. This tape was a very small part of a very big trial. And I guess I do want to come back to the essential question, which we talked about at the beginning, which was, is this case procedurally defaulted? Was all these issues that we're talking about now, were they raised in the state court as a constitutional question? And I would argue that they were not. All of the arguments that we've talked about today were raised simply as state court questions. At trial or at the appellate court level, a petitioner argued only that this was fundamental error under state law. He threw in as an afterthought in the summary to the entire argument, which consisted of three subarguments. He threw in the argument that this is ‑‑ we got a fifth, 14th, sixth here. He never spelled it out. I think my time is up. If there are no further questions, thank you very much. Thank you, counsel. Ms. Brewer will equalize your time by adding on a bit so you have the opportunity to respond. Thank you. Justice Rimer, I cannot respond to your question regarding that case. I can't find it in the State's brief or in our brief, so I just don't even know the facts of it to be able to address it. But to, again, talk about the video. In this video, the officer says, it's scientifically proven by the doctor and everybody else that you, Castile, did this crime. And this is what the jury sees. And it also goes back and forth saying, well, the child died because of the stomach injury. And that was not ‑‑ that was directly in opposition to what the medical examiner testified to. And then he'll say, well, it was the head injury. So it goes back and forth. So it keeps saying the stomach and the head. And the stomach, although it may have been able to go to the issue of a child abuse claim, it wasn't even the cause of murder, and the officer keeps saying it's the stomach that did it, it's the head that did it, whatever suits him. And the main part of it is that the jury sees him being treated like he's a criminal. And there's so much that protects a defendant from that. Defendants aren't allowed to be brought in in shackles. They're not allowed to come in in their jail clothing. They come in in a suit, and that's so a jury does not see them as a criminal. And when you have a jury looking at two people who could have done it, the mother, who's not treated that way, doesn't have a video of her being treated that way, and Castile, who is being treated that way, it's very difficult for a jury to make a decision that makes any sense at all. Counsel, would you address the State's argument that under AEDPA, where our review is limited, that the State Court of Appeals did not have a full and fair opportunity to consider the due process clause argument because you didn't properly raise it and therefore have waived it? I'm looking at your brief filed in the Arizona Court of Appeals, and you've argued that it was fundamental error and highly prejudicial, but I see mostly references to rules of evidence, which would not necessarily amount to a due process claim. Well, beyond that, it was also argued that there was violations of the U.S. Constitution and Supreme Court cases were specifically cited. Yeah, but some of the Supreme Court cases also deal with questions of rules of evidence, not with the due process clause. And the cases, if I recall directly, also deal with due process violations. I'm on stop. Am I done? Or was that the State's time? Okay. Thank you very much. All right, counsel. Thank you. The matter just argued will be submitted. And we'll next hear argument in Sands.
judges: Rymer, Hawkins, Bybee